# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**GREG M. KIRSTE,**

               **Plaintiff,**

     **v.**                                    **Case No. 05C0511**

**AMENDED AND RESTATED EXECUTIVE
SEVERANCE POLICY SPONSORED BY
WISCONSIN ENERGY CORPORATION, and
WISCONSIN ENERGY CORPORATION,**

               **Defendants.**

---

**SCOTT A. LORD,**

               **Plaintiff,**

     **v.**                                    **Case No. 05C0512**

**AMENDED AND RESTATED EXECUTIVE
SEVERANCE POLICY SPONSORED BY
WISCONSIN ENERGY CORPORATION, and
WISCONSIN ENERGY CORPORATION,**

               **Defendants.**

---

## DECISION AND ORDER

Plaintiffs Greg Kirste and Scott Lord, both former employees of a subsidiary of a subsidiary of defendant Wisconsin Energy Corporation ("WEC"), bring actions under the Employee Retirement Income Security Act ("ERISA"), naming as defendants WEC's Amended and Restated Executive Severance Policy ("the policy") and WEC. Plaintiffs allege that the policy breached its duty to pay severance benefits and that WEC violated its duty as a fiduciary in a number of respects. Plaintiffs seek benefits pursuant to 29

U.S.C. § 1132(a)(1)(B) and unspecified equitable relief pursuant to 29 U.S.C. § 1132(a)(2) and (3). Plaintiffs' cases are factually similar and present identical legal issues, thus, pursuant to Fed. R. Civ. P. 42(a), I will consolidate them. Before me now are plaintiffs' motions for summary judgment with respect to their benefit claims and defendants' cross-motions for summary judgment with respect to all of plaintiffs' claims.

## I. FACTS

In 2000, WEC and another utility, WICOR, merged, and WICOR became a WEC subsidiary. In anticipation of the merger, WEC adopted a policy pursuant to which it would provide severance benefits, generally two years pay, to executives who were terminated in the two years following the merger. Subsequently, WEC amended the policy so that it would cover executives who were terminated in other specified circumstances. In 2004, WEC sold off WICOR's non-utility subsidiaries, including the entities that employed plaintiffs. Subsequently, plaintiffs were discharged. Plaintiffs sought severance benefits from WEC under the policy, and WEC denied their requests. Plaintiffs appealed to WEC's employee benefit committee unsuccessfully and then brought the present actions. I will state additional facts in the course of the decision.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Anderson

2

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When both parties have moved for summary judgment, both are required to show that no genuine issues of fact exist, taking the facts in the light most favorable to the party opposing each motion. If issues of fact exist, neither party is entitled to summary judgment. Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983).

## III. DISCUSSION

### A. Benefits

Article 4.2(aa) of the policy, entitled "Covered Termination Associated with a Change in Control," states that "in the event of a Covered Termination Associated With a Change in Control, a Participant shall be entitled to receive Separation Benefits." (Pls.' Mot. for Summ. J. App. II Ex. 3.) The policy contains several alternative definitions of a covered termination associated with a change in control. Plaintiffs contend that they are entitled to benefits under Appendix § 3(d) of the policy, which states that:

> [A "Covered Termination Associated with a Change in Control" occurs when] an Employer or any affiliate of an Employer sells or otherwise distributes or disposes of the subsidiary, branch or other business unit in which the Participant was employed before such sale, distribution or disposition and the requirements of Section 4.2(b)(iii), substituting for the words "the WICOR Closing Date", the words "the first date on which a Change in Control of the Corporation occurs", are not met, and the Participant ceases to be an Employee by action of the Employer upon or within 90 days after such sale, distribution or disposition.[1]

_____

[1]Article 4.2(b)(iii) to which § 3(d) refers, states that:

3

(Pls.' Mot. for Summ. J App. II Ex. 3.) The parties agree that the phrase "change in control" refers to a change in control of WEC[2] and that no change in control of WEC took place. Plaintiffs, however, argue that pursuant to § 3(d) WEC must pay them severance benefits because the section does not include the phrase "change in control."

The policy does not confer discretion on an administrator to interpret its provisions; therefore, I review the denials of benefits to plaintiffs de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Defendants based their denials on the language of the policy, thus, I must interpret the policy. In doing so, I attempt to discern the intent of

---

A termination due to a qualified sale of business shall have occurred where an Employer or an affiliate of an Employer has sold, distributed or otherwise disposed of the subsidiary, branch or other business unit in which the Participant has been offered employment with the purchaser of such subsidiary, branch or other business unit or the corporation or other entity which is the owner thereof on substantially the same terms and conditions under which he worked for the Employer (including, without limitation, base salary, duties and responsibilities, program of benefits and location where based). Such terms and conditions shall also include, without limitation, a legally binding agreement or plan covering such Participant, providing that upon a termination of employment with the subsidiary, branch or business unit (or the corporation or other entity which is the owner thereof) or any successor thereto of the kind described in Article VI of this Plan, at any time before the end of a 2-year period following either the WICOR Closing Date or the first date on which a Change in Control of the Corporation occurs, as the case may be, the Participant's employer or any successor will pay to each such former Participant an amount equal to the Separation Benefit and other benefits that such former Participant would have received under the Plan had he been a Participant at the time of such termination. For purposes of this subsection, the new employer plan or agreement must treat service with any Employer (irrespective of whether the Employer was an affiliate of the Corporation or the Employee was a Participant at the time of such service) and the new employer as continuous service for purposes of calculating Separation Benefits.

[2]"Change in control" is defined as such in Appendix § 2 of the policy.

4

its creator.  <u>Hickey v. A.E. Staley Mfg.</u>, 995 F.2d 1385, 1389 (7th Cir. 1993).  I ascertain such intent primarily from the policy's language, and if possible, I give meaning to all of the policy's provisions.  <u>Firestone</u>, 489 U.S. at 113; <u>see also</u> <u>Herzberger v. Standard Ins. Co.</u>, 205 F.3d 327, 330 (7th Cir. 2000) (stating that an ERISA plan is a contract).  In deciding whether to grant summary judgment, I first determine whether the policy is ambiguous and, if it is, I consider extrinsic evidence, if any, and determine whether there are triable issues of fact.  <u>Hickey</u>, 995 F.2d at 390.

I conclude that the policy is unambiguous, and that it requires WEC to pay severance benefits only in the event of a change in control of WEC.  As previously stated, no such change occurred.  First, contrary to plaintiffs' assertion, § 3(d) does indeed refer to a change in control.  Section 3(d) references Article 4.2(b)(iii) and provides that the words "the WICOR Closing Date" in such section should be replaced by the words "the first date on which a Change in Control of the Corporation occurs."  (Pls.' Mot. for Summ. J. App. II Ex. 3.)  Second, the phrase "covered Termination Associated with a Change in Control," which § 3(d) defines, encompasses the phrase "change in control."  Third, Article 4.2(b)(iii) authorizes WEC to pay benefits if a specified event does not occur "before the end of a two-year period following the first date on which a Change in Control occurs."  If I required WEC to pay benefits without having undergone a change in control, I would render the above phrase superfluous.  <u>See</u> <u>Hess v. Hartford Life & Accident Ins. Co.</u>, 274 F.3d 456, 462 (7th Cir. 2001) (declining to interpret an ERISA plan to render a word superfluous).  Finally, the introduction to the policy states the purpose of the policy is to protect covered employees "should a change in control of [WEC] occur."  (Pls.' Mot. for Summ. J. App. II Ex. 3.)

5

Even if the phrases "change in control" and "Covered Termination Associated with a Change in Control" were ambiguous, defendants present extrinsic evidence indicating that WEC intended the amended policy to provide severance benefits only if WEC underwent a change in control. The minutes of the meeting at which WEC adopted the amended policy state that the purpose of the amendment was to provide benefits "in the event of a change in control of [WEC]." (Defs.' App. in Supp. Ex. A.) In addition, WEC distributed a memorandum to covered employees stating that they could receive benefits if they were terminated "within a period of 2 years following a change in control of WEC." (Pls.' Mot. for Summ. J. App. II Ex. 4 § 8.)

Plaintiffs offer extrinsic evidence, but even if the policy were ambiguous, such evidence would be insufficient to create a triable issue of fact. See Confold Pac., Inc. v. Polaris Indus., Inc., 433 F.3d 952, 956-57 (7th Cir. 2006) (stating that the extrinsic evidence so strongly supported the defendant that a trial could have had only one outcome). Plaintiffs' evidence indicates that WEC paid severance benefits to certain executives even though no change in control occurred. However, this evidence does not bear on whether plaintiffs are entitled to benefits under the policy because WEC did not grant such benefits pursuant to the policy, but as the result of individual negotiations. See Hickey, 995 F.2d at 1390 (stating that the fact that other employees individually negotiated severance benefits did not support the plaintiffs' claim of entitlement to benefits under the plan). The correspondence between WEC and these executives supports WEC's assertion that it has consistently interpreted the policy as not requiring it to pay benefits in the absence of a change in control. (Pls.' Mot. for Summ. J. App. II Ex. 31, 32, 26.) Plaintiffs also argue that a WEC memo stating that the policy assures executives that they

6

would "be reasonably compensated if they are adversely affected by [energy industry] consolidation," (Pls.' Mot. for Summ. J. App. II Ex. 38) , supports their position.  I disagree.  The memo's language is general and could support either side's position.

Thus, I will deny plaintiffs' § 1132(a)(1)(B) claim against the policy.  Further, to the extent that plaintiffs seek policy benefits from WEC in connection with their § 1132(a)(2) or § 1132(a)(3) claims, I will deny that claim.

**B.     Fees**

The policy requires WEC to pay "all actual reasonable legal fees and expenses" incurred by a covered employee who "institutes any legal action" to obtain a benefit provided by the policy "regardless of the outcome of such action."  (Pls.' Mot. for Summ. J. App. II Ex. 3 at Art. 8.1.)  The parties agree that the above provision requires WEC to indemnify plaintiffs for the fees and expenses incurred in the present action.  However, they disagree as to whether the provision requires WEC to pay the fees and expenses incurred by plaintiffs in the administrative appeal preceding the present action.  I conclude that it does not.  The phrase "legal action" refers to an action in a court of law, not to an administrative proceeding.   See Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743, 756-57 (7th Cir. 2004) (contrasting a "legal action" with an "administrative enforcement"); Nanetti v. Univ. of Ill., 867 F.2d 990, 993 (7th Cir. 1989) (discussing a "threat of legal action" by a party to an administrative proceeding).

Plaintiffs argue that because ERISA requires them to exhaust administrative remedies, I should construe the provision to require WEC to indemnify plaintiffs for their fees and costs in the administrative proceeding.  However, courts construing ERISA's fee

7

provision have reached the contrary conclusion.  See, e.g., Parke v. First Reliance Standard Ins. Co., 368 F.3d 999, 1011 (8th Cir. 2004) (stating that pre-litigation administrative proceedings are not intimately tied to the resolution of a judicial action, particularly since administrative action often obviates the need for judicial action); Peterson v. Cont'l Cas. Co., 282 F.3d 112, 119-21 (2d Cir. 2002) (finding that ERISA authorizes an award for fees only when incurred in relation to a suit filed in a court of competent jurisdiction).  Further, nothing in the amended policy authorizes me to interpret the phrase "legal action" expansively because of ERISA's exhaustion requirement.

**C.    Breach of Fiduciary Duty**

Plaintiffs also allege that WEC violated its fiduciary duty to them and seek unspecified equitable relief.  Plaintiffs claim that WEC violated its fiduciary duty by wrongfully denying them severance benefits, fees and expenses; by initially misinforming them as to the reason for the denials; by placing an individual with a conflict of interest on its appeals committee; by failing to file required documents concerning the policy; and by failing to provide them with a summary plan description.  Defendants ask me to grant summary judgment with respect to all of plaintiffs' claims for equitable relief because "participants claiming benefits payable to themselves are not entitled to also sue for a breach of fiduciary duty under ERISA."  (Defs.' Br. in Supp. at 14.)

However, an ERISA plaintiff may assert a benefit claim under § 1132(a)(1)(B) and a claim on behalf of an ERISA plan under § 1132(a)(2).  Moreover, an ERISA plaintiff is not categorically prohibited from bringing claims under both § 1132(a)(1)(B) and § 1132(a)(3).  In Varity Corp. v. Howe, 516 U.S. 489, 511-12 (1996), the Supreme Court

8

stated that § 1132(a)(3) was a "catchall" provision that acted "as a safety net offering appropriate relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." In response to the defendant's argument that an ERISA plaintiff might attempt to repackage a denial of benefits claim as a breach of fiduciary duty claim, the Court indicated that it expected "that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Id. at 515 (quoting § 1132(a)(3)(B)).

Since Varity, courts have interpreted the "normally . . . not . . . appropriate" language in different ways. The Second Circuit concluded that a plaintiff could prevail on both a § 1132(a)(1)(B) and a § 1132(a)(3) claim, but suggested that because § 1132(a)(1)(B) would ordinarily provide a complete remedy, the court should deny relief under § 1132(a)(3) in such a case. Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001). Other circuits have construed Varity as holding that a plaintiff could not bring a § 1132(a)(3) claim if she could obtain relief under another section of ERISA. See, e.g., Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615 (6th Cir. 1998); Tolson v. Avondale Indus., Inc., 141 F.3d 604, 610 (5th Cir. 1998); Forsyth v. Humana, Inc., 114 F.3d 1467, 1474-75 (9th Cir. 1997); Wald v. S.W. Bell Corp. Customcare Med. Plan, 83 F.3d 1002, 1006 (8th Cir. 1996).

As I stated in Black v. Long Term Disability Ins., 373 F. Supp. 2d 897, 902 (2005), Varity addressed remedies. Varity does not bar an ERISA plaintiff from asserting claims under both § 1132(a)(1)(B) and § 1132(a)(3), but rather teaches that a court should ordinarily not grant a plaintiff relief on both claims. 516 U.S. at 515; see also Parente v.

9

<u>Bell Atl. Pa.</u>, No. CIV. A. 99-5478, 2000 WL 419981, at *3 (E.D. Pa. Apr. 18, 2000) (stating that <u>Varity</u> precludes a plaintiff from seeking equitable relief under § 1132(a)(3) only when a court determines that she "will certainly receive or actually receives adequate relief for her injuries under § 1132(a)(1)(B) or some other ERISA section"). In the present case, plaintiffs may proceed on any claim that they have under § 1132(a)(3) except to the extent that they seek benefits.

However, it is not clear to me whether plaintiffs seek any remedies other than benefits and, if so, whether any material facts are in dispute in connection with their claims. The summary judgment briefs addressed only whether plaintiffs are categorically barred from pursuing relief under both § 1132(a)(1)(B) and § 1132(a)(3). Thus, I will set a status conference to determine how to proceed.

## IV. CONCLUSION

Therefore,

**IT IS ORDERED** that cases 05C0511 and 05C0512 are hereby **CONSOLIDATED**.

**IT IS ALSO ORDERED** that plaintiffs' motion for summary judgment is **DENIED**.

**IT IS ADDITIONALLY ORDERED** that defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as provided herein.

**IT IS FURTHER ORDERED** that Amended and Restated Executive Severance Policy is dismissed from this action.

**IT IS ALSO ORDERED** that a telephonic status conference will be held on

**December 14, 2006 at 10:30 a.m.** The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 30 day of November, 2006.


/s_____
LYNN ADELMAN
District Judge

Case 2:05-cv-00511-LA   Filed 11/30/06   Page 11 of 11   Document 46